UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>       Plaintiff,<br><br>and<br><br>Adam Breaux,<br>       Plaintiff-Intervenor<br><br>v.<br><br>Product Fabricators, Inc. et al,<br><br>       Defendants, | Civil No. 11-2071 (MJD/LIB)<br><br><br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

      This matter came before the undersigned United States Magistrate Judge upon Plaintiff's Motion to Strike.  The motion has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.  The Court recommends that Plaintiff's motion to strike be granted as more fully described herein.

**I.    BACKGROUND**

      The Equal Employment Opportunity Commission (Plaintiff) brings this action under the Americans with Disabilities Amendments Act of 2008 and the Civil Rights Act of 1991 "to correct unlawful employment practices on the basis of retaliation and to provide appropriate relief to Adam Breaux, III ("Breaux") who was adversely affected by such practices."  (Am. Compl. [Docket No. 7] at 1).  It alleges that Mr. Breaux was improperly terminated in retaliation for a request to accommodate a leave and in retaliation for having participated as a witness in an EEOC investigation of a charge of discrimination filed by a former employee of Defendant

Product Fabricators, Inc. (PFI). (Id. ¶¶ 14-15). Additionally, Plaintiff alleges that Defendant PFI was sold to M&M Manufacturing, Inc. (M&M) and asserts a successor liability claim. (Id. ¶ 19). Plaintiff alleges that PFI was owned by Michael Murphy, Sr. and that M&M was owned and operated by Michael Murphy, Jr. and Mark Murphy, the sons of Michael Murphy, Sr. (Id. ¶¶ 20-22).

Adam Breaux (Plaintiff-Intervenor) asserts claims for violation of the ADA, a retaliatory discharge in violation of Minn. Stat. § 176.82, subd. 1, and refusal to offer continued employment in violation of Minn. Stat. § 176.82, subd.2. (Compl. of Plaintiff-Intervenor Adam Breaux [Docket No. 30] ¶¶ 16-29).

In their answer to the Amended Complaint, Defendants raise several affirmative defenses that Plaintiff argues "are unavailable as a matter of law, and/or cannot be established by plausible facts in Defendants' pleading." (Mem. in Supp. of EEOC's Rule 12(f) Mot. [Docket No. 15] at 1). As such, Plaintiff has filed the present motion to strike the affirmative defenses asserted in paragraphs 21, 23, 24, 25, and 26 of Defendants' Answer to the Amended Complaint. (Id.)

## II.   PLAINTIFF'S MOTION TO STRIKE

### A. Standard of Review

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Because such relief is an "extreme measure," however, motions under Rule 12(f) are viewed with disfavor in the Eighth Circuit and are infrequently granted. Stanbury Law Firm, P.A. v. Internal Revenue Serv., 221 F.3d 1059, 1063 (8th Cir. 2000); Daigle v. Ford Motor Co., 713 F. Supp.2d 822, 830 (D. Minn. 2010). Nevertheless, the Court has "liberal discretion" under the rule, Stanbury, 221 F.3d at 1063, and a motion to strike should be granted "if the result is to make a trial less

complicated or otherwise streamline the ultimate resolution of the action." Daigle, 713 F. Supp.2d at 830.

"A motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977). However, where the defense asserted is "foreclosed by prior controlling decisions or statutes," the Court may strike it as legally insufficient. Holt v. Quality Egg, LLC, 777 F. Supp.2d 1160, 1169 (N.D. Ia. Mar. 25, 2011). In that regard, "[t]he motion closely resembles a motion to dismiss in that all well plead allegations in the affirmative defense must be accepted as true and the Court must find that the defense at issue is legally insufficient." United States v. NHC Health Care Corp., 2000 WL 33146581, at *1 (W.D. Mo. Dec. 29, 2000).

### B. Affirmative Defense that Plaintiff's Claims may be Barred by the Minnesota Workers Compensation Act

The Minnesota Worker's Compensation Act provides that "[t]he liability of an employer prescribed by this chapter is exclusive and in the place of any other liability . . . ." Minn. Stat. § 176.031.

Plaintiff argues that "Defendants' contention that EEOC's suit is barred by the exclusivity provision of the Minnesota Workers Compensation Act ignores the Supremacy Clause of the United States Constitution and the explicit provisions for damages in the federal laws under which the EEOC is proceeding." (Mem. in Supp. of EEOC's Rule 12(f) Mot. at 2). The Court agrees.

Defendants argue that the Minnesota Supreme Court "has conclusively held that the Minnesota Workers' Compensation Acts exclusivity provision precludes any additional

employer liability for disability discrimination under the Minnesota Human Rights Act." (Defs.' Resp. to Pl.s' Rule 12(f) Mot. [Docket No. 23] at 2) (citing Karst v. F.C. Hayer Co., Inc., 447 N.W. 2d 180 (Minn. 1989)).  Here, the Plaintiff has brought an action under federal law, specifically, the Americans with Disabilities Act (ADA)—not under the Minnesota Human Rights Act.  The Minnesota Supreme Court's decision that the exclusivity provision of the Minnesota Workers' Compensation Act bars any subsequent actions under the Minnesota Human Rights Act is inapposite to the present case.

Defendants also argue that Plaintiff has not provided any "precedential case law from the Eighth Circuit conclusively holding that the Minnesota Workers' Compensation Act cannot limit remedies under the Americans with Disabilities Act."  (Defs.' Resp. to Pl.s' Rule 12(f) Mot. at 3).  Plaintiffs, rely on Karcher v. Emerson Electric Co., 94 F.3d 502, 509 (8th Cir. 1996) for the proposition that "the exclusivity provision of a state worker's compensation law cannot preempt a federally created right to recover damages under Title VII." (Mem. in Supp. of EEOC's Rule 12(f) Mot. at 5).  In Karcher, the Eighth Circuit held that the "exclusivity provision of the Missouri workers' compensation statute . . . [c]learly . . . cannot preempt [the plaintiff's] federally created right to recover damages for emotional distress under Title VII."  94 F.3d at 509.  The Missouri statute exclusivity provision included language very similar to the language of the Minnesota statute: "[t]he rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, . . . at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter."  Karcher, 94 F.3d at 509 (citing Mo. Rev. Stat. § 287.120.2).  Though the Eighth Circuit was directly addressing exclusivity provision of a Missouri workers' compensation statute, rather than the Minnesota workers' compensation statute, its' holding that a state

4

workers' compensation statute "clearly . . . cannot preempt [a plaintiff's] federally created right to recover damages for emotional distress under Title VII" is equally applicable to the present case. Indeed, the Eighth Circuit has previously even held that the Federal Employees' Compensation Act, which is "the exclusive remedy for workplace injuries suffered by federal employees, . . . does not bar federal employees from suing their employers under the anti-discrimination laws." Meester v. Runyon, 149 F.3d 855, 856 (8th Cir. 1998).

Defendants attempts to distinguish Karcher by highlighting that, as the court in Karcher even stated, the Missouri exclusivity provision did not bar recovery under the Missouri Human Rights Act. As already explained above, the Court finds irrelevant the interplay between a state's workers' compensation statute and that state's human rights act when considering whether the exclusivity provision of the state workers' compensation statute bars a federal cause of action under the Americans with Disabilities Act. This Court has previously held, in addressing preemption with respect to the Minnesota Workers Compensation Act and the United States Rehabilitation Act of 1973, that "the federal remedy for disability discrimination cannot be limited by a state workers compensation act." Smith v. Lake City Nursing Home, 771 F. Supp. 985, 987 (D. Minn. 1991). The Court's holding in Smith is also applicable here.

Other courts addressing the issue have likewise unanimously found that a state workers' compensation statute cannot preempt a federal cause of action under the ADA. In Liss v. Nassau Cnty., 425 F. Supp.2d 335, 342 (E.D. N.Y. 2006), addressing a defendant's argument that "the plaintiff may not seek damages under the ADA" in light of the exclusivity provision of the New York workers' compensation statute, the court stated that "the defendants' argument is without merit." "The New York State Worker's Compensation does not bar an employee from suing his employer under federal civil rights laws." Liss, 425 F. Supp.2d at 342. In Lopez v. S.B.

5

Thomas, Inc., 831 F.2d 1184, 1190 (2d Cir. 1987), the court held: "we do not read the workers' compensation law to deny relief under a federal statute."   "Were state law to erect such a bar, it would clearly run afoul of the Supremacy Clause of the U.S. Const. Art. VI, cl. 2."  Id.; see also Roberts v. Roadway Exp., Inc., 149 F.3d 1098, 1105 (10th Cir. Jul. 2, 1998) ("[i]f [the defendant] means to argue that Colorado's Workers' Compensation Act provides the exclusive remedy for all work-related injuries including emotional distress caused by violations of the [federal] civil rights laws, that argument is readily disposed of by the Supremacy Clause.") (citing Karcher and Lopez); Rose v. Baystate Med. Center, Inc., 985 F. Supp. 211, 215 (D. Mass. Nov. 1997) ("[w]hile the Workers' Compensation Act largely precludes common law claims against an employer, equally clear is that, under the Supremacy Clause, an exclusivity provision of a state's workers' compensation law cannot pre-empt an employee's [federal] right under Title VII to be free from sexual harassment.") (citing Karcher); Worthington v. City of New Haven, 1999 WL 958627, at *8 (D. Conn. Oct. 5, 1999) ("state law making recovery under a worker's compensation statute the exclusive remedy for work-related injuries cannot bar an employee from seeking relief for employment discrimination under the [federal] ADA or Section 504 in light of the Supremacy Clause of Article VI of the Constitution.  The defendant's argument turns the Supremacy Clause on its head and runs counter to basic principles of federalism. Legislatures enacted workers compensation schemes to replace state tort law as applied to workplace injuries, not to displace federal laws designed to vindicate discrimination by an employer.").

For the reasons stated above, the Court finds that Defendants' affirmative defense that the Minnesota Workers' Compensation Act bars Plaintiff's [federal] claims under the Americans

with Disabilities Act is insufficient as a matter of law and should be stricken pursuant to Rule 12(f).[1]

### C. Affirmative Defense that Plaintiff's Claims may be Barred by the Doctrine of Unclean Hands

Plaintiff argues that this affirmative defense fails as a matter of law for two reasons: 1) "The EEOC is Permitted to Disclose Information to Witnesses in an Investigation"; and 2) "Defendants' Failed to Allege Sufficiently Egregious Misconduct to Maintain an 'Unclean Hands' Defense, and also Fail to Allege a 'Direct Nexus' Between the Alleged Conduct and This Lawsuit." (Mem. in Supp. of EEOC's Rule 12(f) Mot. at 7-12). Each argument is addressed in turn.

### 1) Whether the EEOC is Permitted to Disclose Information to Witnesses in an Investigation

As Plaintiff concedes, "Title VII limits the EEOC's ability to 'make public' information it obtains during investigations of charges of discrimination." (Mem. in Supp. of EEOC's Rule 12(f) Mot. at 7).

> Neither a charge, nor information obtained during the investigation of a charge of employment discrimination under title VII, the ADA, or GINA, nor information obtained from records required to be kept or reports required to be filed pursuant to title VII, the ADA, or GINA, shall be made matters of public information by the [EEOC] prior to the institution of any proceeding under title VII, the ADA, or GINA involving such charge or information. This provision does not apply to such earlier disclosures to charging parties, or their attorneys, respondents or their attorneys, or witnesses where disclosure is deemed necessary for securing appropriate relief.

---

[1] Defendants additional argument that they "should be allowed to fully discover and research" the issue and later bring a motion for summary judgment is unpersuasive. Plaintiff has not sought to strike Defendants' affirmative defense because of a pleading failure, rather, Plaintiff has asserted that the affirmative defense fails as a matter of law. Defendants' assertion that "this fairly presents a question of law that requires further discovery" is unfounded. Furthermore, Defendants assertion that a hearing on the matter is required was later negated by the parties' joint submission to the Court providing that they "do not believe oral argument is necessary to the Court's disposition of this motion, and agree to waive oral argument." (Docket No. 36 at 2).

29 C.F.R. § 1601.22.  Relying on <u>EEOC v. Associated Dry Goods</u>, 449 U.S. 590 (1981), Plaintiff argues that any disclosure it made in the prior investigation was permitted by law.  In <u>Associated Dry Goods</u>, in defining the word "public," the United States Supreme Court explained that some disclosure of information is necessary in certain circumstances.  449 U.S. at 601 ("limited disclosure enhances the Commission's ability to carry out its statutory responsibility to resolve charges through informal conciliation and negotiation.")

Although Plaintiff may be correct that the EEOC may in certain circumstances divulge information discovered through its investigation, whether the EEOC could disclose information because "disclosure [was] deemed necessary for securing appropriate relief," in this particular case, would require a further development of the record.  Plaintiff admits that "[d]uring the investigation of a prior charge of discrimination, the EEOC disclosed the name of a charging party to various witnesses who worked for Defendants, including Adam Breaux."  (Reply Mem. in Supp. of EEOC's Rule 12(f) Mot. [Docket No. 25] at 3).  Given the general prohibition against disclosures of information obtained during the investigation, despite the express provision allowing disclosure in certain circumstances, at this stage in the litigation, the Court cannot say that this issue does not "fairly presents a question of law or fact which the court ought to hear"; however, as more fully discussed below, even if such a disclosure was made improperly, it does not change the Court's holding that the unclean hands affirmative defense should be stricken.

**2) Whether Defendants' Allegations are Sufficient to Assert an Unclean Hands Defense**

Plaintiff argues that "[b]ecause Defendants' unclean hands affirmative defense fails to allege that any government misconduct occurred in the investigation preceding *this* lawsuit, it

lacks a direct nexus to the EEOC's acquisition of its right to bring this suit . . . [and] fails as a matter of law." (Mem. in Supp. of EEOC's Rule 12(f) Mot. at 12) (emphasis in original).

Plaintiff concedes that a claim of unclean hands can be a basis for a defense against the EEOC, but argues that "[e]ven where courts have permitted unclean hands defenses against government agencies bringing enforcement actions, they have required that 'the agency's misconduct be egregious and the resulting prejudice to the defendant rise to a constitutional level.'" (Mem. in Supp. of EEOC's Rule 12(f) Mot. at 11) (citing SEC v. Elec. Warehouse, Inc., 689 F. Supp. 53, 73 (D. Conn. 1988)).

The Court recently examined the applicability of an unclean hands affirmative defense in the context of an EEOC investigation. See E.E.O.C. v. Hibbing Taconite Co., 266 F.R.D. 260, 269 (D. Minn. 2009). "Unclean hands is an equitable defense which prevents a party from maintaining a suit in equity." Id. In addressing whether unclean hands is even available as an affirmative defense against the government, the Court noted that "[c]ourts have been hesitant to allow the defense of unclean hands against the Government when it acts in the interest of the public." Id. Nevertheless, it held that it "need not determine whether a defense of unclean hands should be unavailable, as a matter of law, against the EEOC in its public capacity," because [the defendant] ha[d] not pled a viable defense on that issue." 266 F.R.D. at 270. Similarly, the Court need not now decide whether unclean hands as plead is available as an affirmative defense because it finds that Defendant cannot even satisfy the required standard set forth by courts permitting an unclean hands defense.

> To survive a Motion to Dismiss an equitable defense of unclean hands against the EEOC, [the defendant] must sufficiently plead that the EEOC acted in bad faith, or inequitably, in its dealings with [the defendant]. [The defendant] must also plead that the bad faith, or inequity, was in regards to the matter in the case, id., or that it prejudiced [the defendant's] defense of the matter. To show that the

>misconduct was relative to the matter, a defendant must demonstrate that the misconduct has a "direct nexus" to the right being enforced in the suit.

Id. (internal citations omitted). Thus, "for an unclean hands defense to succeed, the Government's improper action must be related to its acquisition of the right in suit that it seeks to enforce." Id.

In Hibbing Taconite, the defendant sought unsuccessfully to assert an unclean hands defense because "the EEOC [allegedly] obtained [information] during a confidential mediation session . . . [and] the EEOC then [allegedly] employed the improperly collected information in order to issue its cause finding." Id. at 271. Here, in the present case, any possible nexus is much more attenuated from the Plaintiff's cause of action. Defendants' basis in the present case for asserting an unclean hands affirmative defense is Plaintiff's alleged identification of the charging party in a previous EEOC investigation to Adam Breaux, who was merely a witness in the prior investigation. (Defs.' Ans. to Am. Compl. [Docket No. 10] ¶ 23).[2] Though Defendants assert in a conclusory manner that there is "a causal nexus between that breach by Plaintiff and the claims that Plaintiff has asserted," they fail to provide how the disclosure of a charging party in a previous investigation to a witness in that previous matter, even if improper, is in any way related to the EEOC's acquisition of the right to bring suit on behalf of a person in a latter, independent action (even if that person was the one to whom the identity of the charging party was made in the previous investigation). The Complaint alleges that Mr. Breaux was terminated

---

[2] The Court acknowledges that the decision in Hibbing Taconite was premised on a pleading failure, which the Court analyzed "with the Twombly pleading standards in mind," 266 F.R.D. at 268, and that since the decision in Hibbing Taconite, some disagreement has been noted on whether the Twombly pleading standard applies in evaluating an affirmative defense. See U.S. Bank Nat'l Assoc. v. Educ. Loans Inc., No. 11-1445 (RHK/JJG), 2011 WL 5520437, at *5-6 (D. Minn. Nov. 14, 2011) (noting disagreement on the standard for evaluating affirmative defenses and stating that "[t]he Eighth Circuit has held that an affirmative defense 'need not be articulated with any rigorous degree of specificity and is sufficiently raised for purposes of Rule 8 by its bare assertion" (quoting Zotos v. Lindbergh Sch. Dist, 121 F.3d 356, 361 (8th Cir. 1997))). The Court need not decide whether Twombly pleading standards apply to the affirmative defenses asserted in the present case because even under the Rule 8 standard, the Defendants' assertion of unclean hands doctrine in this case fails since Defendants could not even satisfy the requirement imposed by the courts that have permitted an unclean hands affirmative defense.

"in retaliation for having participated as a witness in [the former] EEOC investigation." Mr. Breaux was merely a witness in the previous action, which is separate and unrelated to the present action by the EEOC. Though the name of the charging party of the previous action may arguably have been disclosed improperly to Mr. Breaux, such disclosure does not have a sufficient nexus to the present EEOC action to support an unclean hands affirmative defense. The interview of Mr. Breaux and the disclosure arising out of those prior independent circumstances is not sufficiently related to the current complaint[3] and, at most, served simply to identify to Mr. Breaux a procedural vehicle in which to bring his own charge.

For the reasons stated above, the Court finds that Defendants' unclean hands affirmative defense should be stricken pursuant to Rule 12(f).

### D. Affirmative Defenses that any Damage Suffered by Adam Breaux was due to Contributory Negligence and Assumption of the Risk

Defendants assert that "any damage suffered by Adam Breaux was caused by or contributed to by the carelessness, negligence, or other unlawful conduct of Breaux and/or other parties over whom [Defendants] had no control"; "the claims and damages alleged by Plaintiff may be barred, in whole or in part, by Adam Breaux's contributory negligence"; and "any damages alleged by Plaintiff may have been the result of risks primarily, voluntarily, knowingly, and contractually assumed by Adam Breaux." (Defs.' Ans. to Am. Compl. ¶¶ 24-26).

Plaintiff argues that "Defendants' affirmative defenses in paragraph[s] 24, 25, and 26 are traditional defenses to negligence," which are inapplicable in cases brought under the ADA's remedial scheme. The Court agrees.

---

[3] In the present action, the Defendant is alleged to have retaliated against Mr. Breaux because he was a witness who provided information in the prior EEOC investigation and not because Mr. Breaux was made aware possibly of the identity of the charging party in that prior investigation.

The Complaint alleges that Defendant Product Fabricators, Inc. intentionally discriminated and retaliated against Mr. Breaux. In <u>EEOC v. First Nat'l Bank of Jackson</u>, 614 F.2d 1004, 1006 (5th Cir. 1980), the court explained that an employer charged with discrimination in a Title VII action may not present affirmative defenses sounding in tort. There, the EEOC brought suit after its investigation revealed that there was reasonable cause to believe that the [defendant] had discriminated against African-Americans. <u>First Nat'l Bank of Jackson</u>, 614 F.2d at 1006. The defendant asserted an affirmative defense of malicious prosecution. <u>Id.</u> The court, in striking the affirmative defense pursuant to Rule 12(f), explained that even if "the bank's allegations of malicious prosecution are meritorious, they could not constitute an affirmative defense to alleged Title VII violations." <u>Id.</u> "The so-called affirmative defense of malicious prosecution and harassment did not relate to the primary issue in Title VII action whether the [defendant] unlawfully discriminated against blacks and black males." <u>Id.</u> Similarly, the contributory negligence defenses in the present case do not relate to the primary issues of whether Defendant Product Fabricators intentionally discriminated and retaliated against Mr. Breaux. It is a well-established general principle that contributory negligence is not a bar to recovery based on intentional acts. <u>See</u> Restatement (Second) of Torts § 481 (1965) ("The plaintiff's contributory negligence does not bar recovery against a defendant for a harm caused by conduct of the defendant which is wrongful because it is intended to cause harm to some legally protected interest of the plaintiff or a third person."); <u>Florenzano v. Olson</u>, 387 N.W.2d 168, 175 (Minn. 1986) ("Without question, principles of comparative negligence would not apply to an intentional tort; we have never so applied them."). Thus, the affirmative defenses based on contributory negligence in the present case are not relevant to the claims asserted in the Complaint. <u>See</u> <u>Scroggins v. State of Kans., Dept. of Human Resources</u>, 802 F.2d 1289, 1292

n.4 (10th Cir. 1986) ("The Agency's enumerated defenses to plaintiff's Title VII claim are incredible and therefore exceedingly noteworthy: assumption of the risk, contributory negligence, laches, consent, statute of limitations, and 'Title VII is an inappropriate legislative act.'"); Djahed v. Boniface and Co., Inc., 2009 WL 453408, at *3 (M.D. Fla. Feb. 23, 2009) (finding that contributory negligence is not an applicable defense to Title VII or a Florida Civil Rights Act claim because "Plaintiff has not alleged negligence on the part of Defendant"); Sanchez v. La Rosa Del Monte Express, Inc., 1994 WL 603901, at *3 (N.D. Ill. Nov. 1, 1994) (striking affirmative defenses to a Title VII allegation because they were based on business torts and "could not negate any Title VII liability [the defendant] might have to [the plaintiff]" and because "[e]ven if the trier of fact ultimately concluded that [the plaintiff] was liable for the wrongs of which [the defendant] complains, that conclusion would have no bearing on the main issue in this case: whether [the defendant] discriminated against [the plaintiff] on the basis of her gender."). Likewise, Defendants' affirmative defense of assumption of the risk is inapplicable because an individual cannot voluntarily assume that they will be intentionally discriminated or retaliated against by their employer. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 51 (1974) ("we think it clear that there can be no prospective waiver of an employee's rights under Title VII . . . [because] Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices."); Smith v. Sheahan, 189 F.3d 529, 534 (7th Cir. 1999) ("[t]here is no assumption-of-risk defense to charges of workplace discrimination."); Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 194 (4th Cir. 2000) (citing Sheahan and explaining that "a prevailing workplace culture [cannot] excuse discriminatory actions").[4]

---

[4] In deciding that contributory negligence and assumption of the risk defenses are inapplicable to the claims at issue, the Court makes no decision with respect to Mr. Breaux's alleged failure to mitigate damages, which Plaintiff has

For the reasons stated above, the Court finds that Defendants' affirmative defenses of contributory negligence and assumption of the risk, (Defs.' Ans. to Am. Compl. ¶¶ 24-26), should be stricken pursuant to Rule 12(f).

### III. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1) Plaintiff's Motion to Strike [Docket No. 13] be **GRANTED** as more fully described above.[5]

Dated: June 18, 2012             s/Leo I. Brisbois
                                                     LEO I. BRISBOIS
                                                     United States Magistrate Judge

**N O T I C E**
Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by July 2, 2012**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.

---

not sought to strike in this motion. See Doe v. Oberweis Dairy, 456 F.3d 704, 714 (7th Cir. 2006) ("Title VII does require mitigation of damages with respect to back pay, because it provides that 'interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable' . . . [b]ut failure to mitigate is distinct from comparative fault . . . [because] [t]he duty to mitigate arises after the plaintiff has been injured, [while] the duty of care before.").

[5] Because the Court recommends granting Plaintiff's motion to strike, it also recommends, and need not address further, denying Defendants' request for attorney's fees incurred in responding to the motion.